## DONELY *against* ROCKFELLER AND FELLER.

ERROR from the C. P. of Columbia. The action in the
Court below was debt on a penal bond, dated November
2d, 1817, executed by A. Donely and two others, to Rock-
feller & Feller, as overseers of the poor of the town of Cler-
mont, and conditioned to indemnify as well such overseers,
as all and every the other inhabitants, &c. against all
costs, charges, rates, assessments, damages and expenses
whatsoever, for or by reason of the birth, education and
maintenance of a bastard child, begotten by one John
Donely, one of the co-obligors on the body of Hannah
Lasher, an inhabitant of Clermont, &c. The declaration
averred that the child was born on the 1st day of April,
1818, and was living when the action was commenced,
August, 1821 ; but that neither the defendant, nor his co-
obligors, or either of them, had indemnified as well the
plaintiffs, as overseers, &c. but had refused and neglected,
&c. and that the plaintiffs on the 1st day of January, 1818,
and on divers other days and times, &c. were obliged to
lay out and expend large sums of money, viz. $100 in and
about the laying in expenses of Hannah Lasher, and in
and about the birth, education and maintenance of her
child ; and that the successor of Feller, one of the plaintiffs,
also was obliged to expend other $100 for the same purpose.

The only evidence given at the trial, in support of the
plaintiff's action, beside the bond, was an order of filiation,
dated April 25th, 1818, made by two Justices upon John
Donely, charging him with the payment of $16, lying in

<div style="float:right;width:30%;font-style:italic">An action
on a bond giv-
en by a puta-
tive father and
his sureties, to
the overseers
of the poor, to
indemnify a
town against
the mainte-
nance of a bas-
tard child, will
not lie, unless
the overseers
show that they
have been
damnified by
an actual pay-
ment of mo-
ney, or other
disbursement
in support of
the child.

A mere lia-
bility to main-
tain the child
is not suffi-
cient.

An order of
filiation against
the putative
father, char-
ging him with
a weekly pay-
ment of mo-
ney, or pay-
ment of money
for past expen-
ses, &c. is not
admissible evi-
dence in such
an action.</div>

and other past expenses, and 56 cents weekly thereafter. But no actual disbursements by the overseers, or either of them, on account of the child was shown ; on the contrary, it appeared that the child had been supported by the mother, aided by several sums which had been paid in for her use, under the order of filiation ; and which were endorsed upon the order. The sums due by the order had, however, run in arrear till, at the time of the trial, about $50 was due.

The reading this order in evidence was objected to ; but the objection was overruled. The defendant's counsel moved for a nonsuit, which was denied ; and the Court charged in favor of the plaintiffs below, and the jury found a verdict accordingly, and assessed the damages at $50 61. The defendant excepted to the decisions and charge of the Court, and the cause came here on a bill of exceptions.

*D. B. Tallmadge,* for the plaintiff in error. Both breaches aver that the plaintiffs below have not been indemnified, and specify the consequences, which are two payments of $100 each, at several times, towards the maintenance, &c. of the child. Not one cent has been expended. The averments are entirely unsupported. The bond in question is, in every sense, one of indemnity merely ; and I need not cite authorities to show that actual, certain, specific damage must be shown by the plaintiffs to entitle them to a recovery. They must have been put to expense, and obliged to pay by reason of the matter against which the security was taken, or, at least, the damages should have been liquidated by a judgment against them, rendering their liability fixed and inevitable. This doctrine receives the plainest illustration by the decisions touching the liability of bankrupts and insolvents. Suppose the defendant had been discharged under the insolvent act, and the next day the plaintiffs had been obliged to expend money for the maintenance of the child ; it is clear that the discharge would be no bar to the action. The reason is that the discharge would be obtained before the right of action accrued. It depends on the fact of payment. (*Chilton* v. *Whiffin,* 3 Wils. 13. *Griffith* v. *Harrison,* 1 Salk. 196, 197.)

ALBANY,
Feb. 1825.

Donely
v.
Rockfeller.

Here is no evidence that the overseers were ever even liable to pay. The mother maintained the child ; but the law implies no promise on the part of the overseers to pay her for this. (*Steven* v. *O. of Dover*, 12 John. Rep. 195. *Brooks* v. *Read*, 13 id. 380. *Olney* v. *Wickes*, 18 id. 122. *Rouse* v. *Moore*, id. 407.) But mere liability to pay, if it existed, could not be enough. Such a position would, in its consequences, make the putative father and his sureties liable to a suit the day after a bond is given, for some speculative amount which such officers may fancy they will be bound to pay ; but which, in the event, may never devolve upon them.

The order of filiation was improperly received in evidence. It was, as respects the surety, *res inter alios*. No such order was necessary ; and it could form no test of the amount due. It fixes the sum to be paid by the putative father for past expenses, which were paid ; and then requires a prospective payment of 56 cents weekly. This was conclusive upon nobody concerned in the bond, not even upon the overseers. Suppose they had been obliged to pay $2 weekly, this could be recovered notwithstanding the order ; and if they had paid but 25 cents, they could demand no more. That the order has nothing to do with the damages, was settled in *Falls* v. *Belknap*, (1 John. Rep. 486.)

*C. Bushnell*, for the defendant in error. The child was an inhabitant of Clermont ; and the order of filiation and payment under it, were conclusive evidence of the putative father's liability. (*Falls and Smith* v. *Belknap*, 1 John. Rep. 486, 491. *Hays* v. *Bryant*, 1 H. Bl. 253. *Sweet* v. *O. of Clinton*, 3 John. Rep. 26. *Wallsworth* v. *Mead and Green*, 9 id. 367. *The People* v. *Relyea*, 16 id. 155.) It was admissible in evidence, as well against the surety as the putative father himself. (*Wallsworth* v. *Mead and Green*, 9 John. 368. *The People* v. *Relyea*, 16 id. 155. *Kip* v. *Brigham*, 7 id. 169. 6 id. 158, S. C. 1 Evans' Poth. pt. 4, ch. 3, s. 3, art. 5, pl. 61, page 562. *Maybee* v *Avery*, 18 John. Rep. 352, 4.

There can be no doubt that the liability of the town to support, and actually providing for the child, would be equivalent to the payment of money, and sustain the action, if the bond were to be regarded as a mere private bond of indemnity. (*Hays* v. *Bryant*, 1 H. Bl. 253.) Here the child has been provided for ; the putative father has from time to time made payments ; and the fair intendment from the evidence is, that the provision was at the expense of the town.

But where a bond is given to indemnify public officers, against official and involuntary liability, that liability, fixed after delinquency of the principal, is sufficient to sustain an action on the bond, without payment; and a contrary rule would often work a ruin to the officer. (*M'Intyre* v. *Woods*, 5 John. Rep. 357. *Kip* v. *Brigham and others*, 6 id. 158, 7 id. 168, S. C. Com. Dig. *Escape*, (E) *The Sheriffs of Worwich* v. *Bradshaw*, Cro. Eliz. 53. *Tillman* v. *Lansing*, 4 John. Rep. 45.)

WOODWORTH, J  The declaration is on a bond, with condition to indemnify and save harmless the plaintiffs in the Court below, from all costs, charges, damages and expenses, by reason of the birth, education and maintenance of a bastard child. The breaches assigned, are, that the defendant has not indemnified the plaintiffs and their successors, in the premises, and by means thereof, they were obliged and did pay divers sums of money, that is $100 for the lying in expenses, and for the maintenance of the child; and further, that the successor in office of Feller, one of the plaintiffs, and Rockfeller, the other plaintiff, were obliged and necessarily did expend divers sums, to wit, $100 in and about the birth, education and maintenance.

The defendant pleads, 1. That the plaintiffs were not obliged to expend the money alleged in the breach. 2. Payment. 3. That the defendant did indemnify and save harmless the plaintiffs; and concludes to the country.

The plaintiff in error contends, that no evidence was offered in the Court below of the expenditure of money, by the plaintiffs, and consequently that the assignment is not supported.

In looking at the pleadings, it seems to me that the first issue substantially is, whether the plaintiffs were liable to pay the money alleged; for, although they, in the assignment, say they were obliged to pay and did pay and expend the money, the defendant in his plea negatives merely the first part of the allegation, to wit, that they were not forced and obliged to pay: the plea is silent as to the allegation, that they actually did pay and expend the money. That the plaintiffs in the assignment understood the expressions, "forced and obliged to pay," as importing no more than that they were liable to be called on to make advances, is very evident, by the next sentence, which is, that they did pay and expend. This would have been repetition and useless, if "obliged to pay" means that they actually made payment, as the counsel for the plaintiff construe the breach, in order to raise the principal question relied on. I think, therefore, that on this issue the plaintiffs below were required to show, that the child was a charge; that in the relation they stood, it became their duty to see that provision was made for its maintenance, and what was the necessary sum accrued for its support to the time of bringing the suit. I apprehend such proof would have been sufficient, whether the plaintiffs had actually made the advances or not. If this doctrine be well founded, it seems to follow conclusively, that the allegation of actual payment need not have been made, being impertinent and irrelevant; and had the defendant expressly alleged non-payment, or even admitting that the plea, in its present form, is so to be understood, the issue would be immaterial in that respect; and if found for the defendant, would, of itself, oppose no obstacle in the plaintiff's way. It will be remembered, that this is a bond to indemnify public officers. The plaintiffs, as overseers of the poor, were bound to provide for the child who was born in and chargeable to the town of Clermont. The child continued a charge upon the town; and the presumption of law is, that the plaintiffs, as their duty required, made suitable provision. (*Hartwell* v. *Root*, 10 John, 345.)

The bond was given to indemnify and save harmless the agents of the town, or, in other words, to pay whatever

might be reasonably required of the plaintiffs for support and maintenance. The construction to be given to a bond of indemnity to a public officer is not, that he shall first advance his own money or that of the town, and then seek remuneration, but that the party covenanting shall, in the first instance, make advances so as to relieve the officer from the burthen. The policy of the law has, therefore, wisely distinguished such a case from that of a bond of indemnity from one individual to another, where the party indemnified must first pay the money before he can sustain an action for any more than nominal damages. (7 John. 358. 4 Mass. Rep. 627.) It is on this principle that a Sheriff, who has taken a bond for the liberties of the prison, (which is in effect a bond of indemnity, (6 John. 189,) is entitled, after judgment against him for the escape, to recover the whole amount in damages without first making payment. (*Kip* v. *Brigham*, 7 John. 168. 5 John. 357, 133. 6 John. 158.)

The plaintiffs offered in evidence the order of filiation, made subsequent to the bond, which was objected to, but properly admitted, because it was an adjudication on the subject matter, against which the bond was to indemnify, and conclusive, until reversed, upon the surety as well as the putative father. It fixed the extent of the defendant's liability, and was equivalent to a judgment for the $16 and the 56 cents weekly. It rested with the defendant to show himself exonerated from the payment. (*Wallsworth* v. *Mead*, 9 John. 368. 7 John. 169. 6 John. 168.)

From the view I have taken of this case, the plaintiffs were entitled to recover a sum sufficient to satisfy for the expense of maintenance, without showing they had paid the amount of such expenses. The order reduced to certainty the sum to be paid, and in so doing is to be considered as a decision made by competent authority, that so much was requisite for the child's support. In consequence of this, it was the duty of the plaintiff to cause relief to be administered to that extent at least.

On the whole, I am of opinion that the judgment in the Court below should be affirmed.

SUTHERLAND, J. The plaintiff in error contends that the plaintiffs were not entitled to recover without proof of the expenditures alleged; and the exception appears to me to be well taken. This is strictly a bond of indemnity; no more: and there is nothing in the case to show that the plaintiffs below have been damnified in any respect. It is distinguishable from the cases of bonds for the jail liberties, relied upon by the counsel for the defendants in error. They are conditioned that the debtor shall remain a true and faithful prisoner, within the liberties of the jail; and the condition is broken, in terms, the moment he goes beyond the limits. *Non damnificatus,* therefore, to such an action on such a bond would not be a good plea; (*M'Clure* v. *Erwin,* 3 Cowen's Rep. 313;) but it would undoubtedly be good in this case. In *Hays* v. *Bryant,* (1 H. Bl. 253,) which was an action on a bond with a condition similar to this, the plea was *non damnificatus;* the plaintiff had actually expended money in support of the child; and the defence was, that it was paid voluntarily; no Justice's order for the payment or allowance having been made. The Court held that such an order was not necessary; that the parish officers were legally bound to maintain the child; and having actually expended money in its support, were entitled to recover on the bond. No action has, I believe, ever been sustained upon such a bond without this actual expenditure; and I think that nothing short of it will support the action.

The order of filiation, if properly received in evidence, does not vary the case. I incline to think, however, that it was not admissible at all. Where a bond is given, no order is necessary to warrant the expenditure. At most, it merely establishes the liability of the putative father, which is also admitted by the act of giving the bond. Had money been actually paid, the order might have been evidence to show that the sum paid was reasonable and proper; but for that purpose only.

SAVAGE, Ch. J. The statute (1 R. L. 306, s. 2) points out two different courses which the putative father may pursue. One is by directly giving a bond to indemnify the

ALBANY,
Feb. 1825.

town, with sureties ; the other by entering into a recogni‑ zance to appear at the next general sessions of the county, and to perform such order as shall be made pursuant to the statute. There is a third remedy which the town may adopt, by an order of filiation alone, without any other secu‑ rity. (Id. s. 1.) This order of filiation has no connection with a bond of indemnity. Here the bond was taken in the first instance, and the order made afterwards. In an action upon this bond, the plaintiffs below were bound to show a damnification by payment of the money for which they sued. A mere liability to pay is not sufficient. The order was the subject of a distinct action ; ( *Wallsworth* v. *Mead & Green,* 9 John. Rep. 367 ;) and had there been a recognizance to abide the order, an action of debt would have lain against the sureties in that. ( *The People* v. *Relyea,* 16 John. Rep. 155.) But when the plaintiffs elected to sue the bond, they were bound to follow up its terms by establishing actual damage. Suppose the defendants had pleaded *non damni‑ ficatus,* must not the plaintiff have replied damage, and shown how they had been damnified ? The order of filia‑ tion had nothing to do with this suit ; and was improperly admitted. The judgment must be reversed, and a *venire de novo* issue from the Columbia Common Pleas.

Judgment reversed.